IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JASON O. WILLIAMS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )   CIVIL ACTION NO. 04-0681-WS-C |
| | ) |
| DONAL CAMPBELL, | ) |
| | ) |
| Respondent. | ) |

**ORDER**

By order entered April 11, 2007, the Court denied the petitioner relief with respect to all claims raised in his petition other than his claim that he is mentally retarded and thus, under *Atkins v. Virginia*, 536 U.S. 304 (2002), immune from execution. (Doc. 21). The Court concluded that the *Atkins* claim is exhausted, is not procedurally defaulted, and is not subject to summary rejection on the various grounds urged by the respondent. (*Id.* at 71-76). By separate order, the Court required the parties to brief the issue "whether the mental retardation determination can be, and whether it should be, made in this Court or the state courts." (Doc. 22). The parties have complied, (Docs. 27, 28, 33), and the issue is ripe for resolution.

The parties agree that the Court has the power to remand to the state court for a determination of whether the petitioner is mentally retarded. (Doc. 28 at 2; Doc. 33 at 2). They differ only as to whether the Court should do so. The petitioner argues that remand is appropriate because such a procedure: (1) protects his interest in the vindication of his federal constitutional rights; (2) upholds Alabama's interests in the administration of its criminal laws; (3) promotes principles of comity; and (4) furthers *Atkins*' intent that the states develop appropriate ways of enforcing the prohibition on executing the mentally retarded. (Doc. 28 at 3-6). The Court reviews these arguments in turn.

The petitioner does not explain how remand to state court would better protect his

interest in vindicating his federal constitutional right not to be executed if mentally retarded. Indeed, his amended petition expressly requested that this Court, not the Alabama courts, determine whether he is mentally retarded. (Doc. 11 at 61, 79-80). The most apparent result of remand would be to delay the ultimate resolution of these proceedings and, while it may be in the petitioner's interest to do so, it is not a relevant consideration in the Court's analysis.

Alabama certainly has an interest in the administration of its criminal laws, but the respondent argues that the state's primary interest at this point is in reaching finality with respect to the petitioner's collateral attacks. (Doc. 33 at 3). This is a recognized state interest. *E.g., Hill v. McDonough*, 126 S. Ct. 2096, 2104 (2006) ("Both the State and the victim have an important interest in the timely enforcement of a sentence."). If the state's interests are to be considered when determining whether to remand to state court, then the state's evaluation of its interests must be given weight.

With respect to comity, "[t]he exhaustion requirement is grounded in principles of comity and reflects a desire to protect the state courts' role in addressing alleged violations of state prisoners' federal rights." *Mauk v. Lanier*, 484 F.3d 1352, 1357 (11th Cir. 2007). "Once state remedies are exhausted, it is the duty of the federal courts to pass on such claims." *Dixon v. Beto*, 472 F.2d 598, 599 (5th Cir. 1973). A claim is exhausted, and the federalism concerns underlying the principle of comity vindicated, when the state is given a "full and fair opportunity to address and resolve the claim on the merits." *Kelley v. Secretary for Department of Corrections*, 377 F.3d 1317, 1344 (11th Cir. 2004) (internal quotes omitted). Because the state courts had such an opportunity and elected not to exercise it, the interests of comity would not be advanced by remand.

The petitioner suggests the Supreme Court has recognized that the interests of state and prisoner "generally favor a remand to the state court over a federal evidentiary hearing." (Doc. 28 at 4). For this proposition, he cites *Jackson v. Denno*, 378 U.S. 368 (1964), and *Rogers v. Richmond*, 365 U.S. 534 (1961). In both *Jackson* and *Rogers*, the

state court had determined the admissibility of a confession using an improper standard and/or methodology, and the Court approved of giving the state court an opportunity to determine admissibility properly.  378 U.S. at 386-93; 365 U.S. at 543-49.  Here, the state court opted not to address mental retardation at all, and neither its interests nor those of comity require an additional opportunity to do what it declined to do before.  Moreover, by their terms *Jackson* and *Rogers* are limited to issues touching on the guilt vel non of the petitioner,[1] and this petitioner's guilt or innocence is not implicated by his claim of mental retardation.  To the extent *Jackson* and *Rogers* may retain vitality (and the petitioner cites no case construing them as he does), they do not address the situation before the Court.

"[W]e leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences."  *Atkins*, 536 U.S. at 317 (internal quotes omitted).  The petitioner finds in this quote a wholesale, perpetual approval of remand to state court for determinations of mental retardation.  (Doc. 28 at 4-6).  This statement, however, acknowledged only that, prior to *Atkins*, states had not established definitions and procedures for making the determination of mental retardation.  Five years after *Atkins*, Alabama has filled this void.  *See Smith v. State*, 2007 WL 1519869 at *7 (Ala. 2007) ("[U]ntil the legislature acts, the definition of mental retardation set forth in *Ex parte Perkins*, [851 So. 2d 453 (Ala. 2002),] along with the procedures set forth in this opinion, must guide the lower courts in deciding *Atkins* claims.").  Thus, remand is not required or encouraged by *Atkins*.

The petitioner turns to the Fifth Circuit for the proposition that "inferior federal courts have no useful role to play until and unless, following *Atkins*, a death sentence is reaffirmed or again imposed on Bell by the state courts."  *Bell v. Cockrell*, 310 F.3d 330, 332-33 (5th Cir. 2002).  That was certainly true in *Bell*, because Texas had not yet responded to *Atkins* by devising a measure of mental retardation and a mechanism for

---

[1] 393 U.S. at 393; 365 U.S. at 547-48.

evaluating it. The quoted material from *Bell*, in short, was limited to a factual situation that does not exist here; it did not establish a universal remand requirement or bias.[2]

Other than opinions fitting the *Bell* pattern, the petitioner cites no cases remanding to state court for a determination concerning mental retardation. The respondent, in contrast, cites several cases from sister federal courts in this state that have made, or are preparing to make, the determination. (Doc. 33 at 4-5).

For the reasons set forth above, the Court concludes that the determination of whether the petitioner is mentally retarded is to be made in these proceedings and not by remand to state court. A schedule for discovery, briefing and motions, and evidentiary hearing shall be established by separate order.

DONE and ORDERED this 19th day of September, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[2] Indeed, the very next sentences from *Bell* make clear that it was addressing only the immediate aftermath of *Atkins*: "Just how the state courts will implement *Atkins*, we cannot say. Clearly, however, the state must be given the first opportunity to apply the Supreme Court's holding in order to insure consistency among state institutions and procedures and to adjust its prosecutorial strategy to the hitherto unforeseen new rule." *Id*. at 333.